RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0234P (6th Cir.)
File Name: 04a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ANNA TRUJILLO,
*Defendant-Appellant.*

No. 02-1521

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-80676—Paul D. Borman, District Judge.

Argued: March 9, 2004

Decided and Filed: July 22, 2004

Before: MARTIN and CLAY, Circuit Judges; MILLS,
District Judge.*

---

## COUNSEL

**ARGUED:** John F. Royal, Detroit, Michigan, for Appellant.
Wayne F. Pratt, UNITED STATES ATTORNEY, Detroit,

---

* The Honorable Richard Mills, United States District Judge for the
Central District of Illinois, sitting by designation.

---

Michigan, for Appellee. **ON BRIEF:** John F. Royal, Detroit,
Michigan, for Appellant. Karen M. Gibbs, UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

RICHARD MILLS, District Judge. In this appeal, Anna
Trujillo asks this Court to vacate her conviction and sentence
and to dismiss the indictment against her, to grant her a new
trial, or to remand her case for re-sentencing.

Trujillo contends that she is entitled to the relief which she
seeks because the district court committed several substantive
and procedural errors which, taken either individually or as a
whole, entitle her to a vacation of her conviction and
sentence.

For the following reasons, we **AFFIRM** the judgment and
the sentence imposed upon Trujillo by the district court.

### I. BACKGROUND

On November 14, 1998, Colorado State Police Trooper
Steven Ortiz stopped a vehicle driven by Norma Jean Campos
near Pueblo, Colorado, for speeding and for impeding the
normal flow of traffic. Beth Ann Rogensues was a passenger
in the vehicle. Trooper Ortiz became suspicious of Campos
and Rogensues because neither individual was listed on the
rental agreement provided to Trooper Ortiz by Campos,[1]
because neither Campos nor Rogensues could identify who

---

[1] The name on the rental agreement was Nancy Nichols, and the
agreement was signed by Shawn Speckman.

had rented the vehicle, and because Campos and Rogensues related inconsistent stories regarding their travel plans.[2]

Thereafter, Trooper Ortiz asked for, and received, permission from Campos to search the vehicle. Upon conducting his search, Trooper Ortiz discovered 123 pounds of marijuana hidden in duffle bags in the trunk. Accordingly, Trooper Ortiz arrested Campos and Rogensues and transported the two women to the Drug Enforcement Administration ("DEA") office.

Once at the DEA's office, DEA task force agents interviewed Campos and Rogensues separately regarding their transportation of marijuana. DEA Task Force Agent Ronald Thurston interviewed Campos. Initially, Campos denied any knowledge about the marijuana. However, Campos eventually admitted that this was approximately her fifth or sixth trip transporting marijuana. Specifically, Campos stated that Anna and Julio Trujillo had contacted her about driving to Arizona in order to meet with some people, pick up loads of marijuana, transport it back to Detroit, Michigan, and deliver the marijuana to them.

Meanwhile, DEA Task Force Agent Perry Powell was interviewing Rogensues. Initially, Rogensues told Agent Powell that she and Campos had been approached by a man at a bus station who had asked them to transport the duffle bags for him. However, after hearing Campos crying in the next room, Rogensues confessed that the story was a lie which she and Campos had made up when they were in the back of Trooper Ortiz's squad car. Rogensues then admitted

---

[2]Campos told Trooper Ortiz that she and Rogensues were on their way back to Detroit, Michigan, from Phoenix, Arizona, (where they had been staying with her aunt) because her mother had suffered a medical emergency. On the other hand, Rogensues informed Trooper Ortiz that they had been in Phoenix in order to relocate a business there, although she could not specify what type of business, and that she was unaware of any medical emergency suffered by Campos' mother.

that they were transporting the marijuana to Detroit for the Trujillos.[3]

After confessing to transporting the marijuana for the Trujillos, Campos and Rogensues provided various details regarding their past marijuana trips for the Trujillos (including providing identifying information which allowed DEA agents in Detroit to confirm the provided information), and they agreed to act as cooperating witnesses and to participate in a controlled delivery of the marijuana to the Trujillos. Thereafter, DEA Task Force Agent Powell telephoned DEA Agent Debra Lynch in Detroit in order to set up a controlled delivery. Based upon the information provided by DEA Task Force Agent Powell, DEA Agent Lynch sought and obtained a search warrant from United States Magistrate Judge Donald Scheer for the Trujillo's home.

On November 15, 1998, Campos and Rogensues returned, under escort, to Detroit. Once in Detroit, Campos told DEA Agent Lynch that she had been introduced to Anna Trujillo through a mutual friend who had made a lot of money transporting marijuana for Anna Trujillo prior to 1998. Campos also informed DEA Agent Lynch that she and Rogensues had driven to and from Arizona in order to transport marijuana for the Trujillos on five prior occasions. Moreover, Campos stated that Shawn Speckman had rented cars for their use on the instant trip and also on two or three prior trips.

In addition, Campos informed the DEA agents that Anna Trujillo had paid her $250.00 to title two cars in her name and, then, to transfer the title back to Trujillo after the cars had been purchased. Finally, Campos and Rogensues advised

---

[3]Rogensues testified that she never looked in any of the duffle bags but assumed marijuana was contained therein based upon what Campos had told her and the amount of money which they were receiving for the trip.

DEA Agent Lynch that they would either page or call Julio Trujillo on his cellular telephone when they got back to Detroit and that, frequently, they would meet at the Trujillo's residence in order to deliver the marijuana.

Campos, Rogensues, and DEA Agent Lynch then went to the Rexford Police Department which is in close proximity to the Trujillo's residence. From there, the Trujillos were paged several times, but no response was ever received. The next day, Anna Trujillo telephonically spoke with both Campos and Rogensues on four occasions which were tape recorded by DEA agents. During the second of these four conversations, Anna Trujillo instructed Campos to "bring the babies in from the cold so that they won't get cold," which Campos understood as an instruction to get the marijuana out of the car and place it inside Campos' home. In the third of these four telephone conversations, Rogensues advised Anna Trujillo that they had brought the babies in so that they would not get cold.

In the fourth conversation, Anna Trujillo told Rogensues that she (Rogensues) and Campos had cost her $250,000.00 and that everyone in the house would have to pay for it. Rogensues testified that she understood the comment to mean that Campos and she would have to pay for the marijuana.[4] Ultimately, the DEA agents were unsuccessful in their attempts to establish a controlled delivery of the marijuana to the Trujillos.

On November 16, 1998, DEA agents searched the Trujillo's home pursuant to the warrant issued by Magistrate Judge Scheer. As a result of the search, DEA agents discovered personal telephone books, titles to two vehicles in Campos' name which had previously been used to transport marijuana, two digital scales, cellular telephones and pagers, and a fax machine. However, no narcotics were discovered.

---

[4]This conversation was not tape recorded.

Campos and Rogensues ultimately pleaded guilty to conspiracy to deliver marijuana pursuant to a plea agreement which required them to cooperate with the Government. As a result of their pleas and cooperation, the district court sentenced Campos and Rogensues to three months in a half-way house, to three months on electronic tether, and to two years of supervised release.

On September 19, 2000, a federal grand jury indicted Anna and Julio Trujillo for conspiracy to possess with the intent to distribute in excess of one hundred kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Julio Trujillo pleaded guilty, pursuant to a written plea agreement, to conspiracy to possess with the intent to distribute in excess of one hundred kilograms of marijuana. In addition, pursuant to the terms of the plea agreement, Trujillo agreed to provide truthful and complete information, in good faith, concerning all of his knowledge about the marijuana trafficking. Thereafter, the district court sentenced Julio Trujillo to eighty-three months of imprisonment.[5]

Anna Trujillo, however, exercised her constitutional right to a jury trial. Prior to the start of her trial, Trujillo filed a motion to suppress the physical evidence obtained as a result of the search of her residence. Trujillo argued that the affidavit in support of the search warrant application filed by DEA Agent Lynch was defective, and therefore, the search warrant was invalid. On September 6, 2001, after conducting an evidentiary hearing, the district court denied Trujillo's motion to suppress. Specifically, the district court found that the information contained within DEA Agent Lynch's affidavit was sufficient to establish probable cause and also found that, even if the affidavit had included the information regarding Campos' and Rogensues' prior inconsistent statements to DEA Task Force Agents Thurston and Powell,

---

[5]Julio Trujillo has filed a separate appeal with this Court challenging the sentence imposed upon him by the district court.

probable cause would have still existed to issue the search warrant.

Furthermore, at the final pretrial conference which occurred five days prior to the start of trial, Trujillo represented to the district court that there had been a break-down in her relationship with her attorneys. As such, Trujillo asked the district court to allow attorney John Royal's motion to substitute his representation for that of her present counsel and, thereafter, to allow her motion to continue the trial so that attorney Royal could have adequate time to prepare for trial.[6] At the hearing, attorney Royal informed the district court that he desired to represent Trujillo in this matter but only if he had sufficient time to prepare for trial, *i.e.*, sixty days. The Government objected to a continuance, asserting that it would be prejudiced by any delay in the start of the trial. The district court then stated that jury selection would proceed as scheduled on November 6, 2001, but that the presentation of the evidence could be delayed until November 8, 2001. Given the district court's denial of the motion to continue, Attorney Royal did not believe that he had sufficient time in which to prepare for trial, and thus, he declined to take the case.

Finally, on the day prior to the start of the trial, the district court heard oral arguments on Trujillo's motion *in limine* to exclude certain evidence, pursuant to Federal Rule of Evidence 404(b), which the Government sought to introduce at trial. Thereafter, the district court excluded some of the Government's evidence but authorized the admission of the rest. Specifically, the district court allowed the Government to introduce: (1) Campos' testimony that, at Trujillo's request, she traveled to Arizona and transported marijuana back to Detroit on several occasions prior to the beginning of the charged conspiracy; (2) Campos' testimony that Trujillo paid her to title several cars in her name and, then, transfer the title

---

[6] Attorney Royal represents Trujillo in this appeal.

back to Trujillo; and (3) evidence of an alleged threat by Trujillo toward Rogensues.

On November 8, 2001, a jury found Trujillo guilty of the one count charged in the indictment. On April 8, 2002, the district court sentenced Trujillo to seventy-eight months of imprisonment. In so doing, the district court denied Trujillo's objection to the amount of marijuana for which she was being held accountable as relevant conduct and also denied Trujillo's objection to a two-level enhancement, pursuant to U.S.S.G. § 3B1.1(c), for being an organizer or leader in the conspiracy. On April 18, 2002, Trujillo filed a timely notice of appeal challenging her conviction and sentence.

## II. ANALYSIS

On appeal, Trujillo has raised seven grounds in support of her argument that we should vacate her conviction and either outright dismiss the indictment against her or grant her a new trial, and she has raised one ground in support of her argument that, at a minimum, we should remand her case for re-sentencing. We will address her arguments *seriatim*.

### A. *MOTION TO SUPPRESS*

Trujillo argues that the search warrant issued by Magistrate Judge Scheer was invalid because the affidavit filed by DEA Agent Lynch in support of the application for the warrant omitted the fact that Campos and Rogensues had given numerous inconsistent versions of the facts surrounding their marijuana trafficking before naming her and her husband as the ultimate recipients of the narcotics. Trujillo asserts that the omission of this critical information regarding the credibility and reliability of Campos and Rogensues rendered the affidavit fatally defective. Trujillo claims that the omitted evidence regarding Campos' and Rogensues' lying to law enforcement agents before settling on a story incriminating her should have triggered an evidentiary hearing where she would have been able to show that DEA Agent Lynch acted

with reckless disregard for the truth in presenting the warrant application to Magistrate Judge Scheer. In short, Trujillo contends that the affidavit presented by DEA Agent Lynch was so condensed that it misled Magistrate Judge Scheer and rendered him unable to determine whether probable cause existed to issue the warrant.

The Government argues that the district court correctly denied Trujillo's motion to suppress because DEA Agent Lynch's affidavit was not facially defective and probable cause existed for the issuance of the warrant. Specifically, the Government asserts that the affidavit informed Magistrate Judge Scheer that Campos and Rogensues had been interviewed separately and provided corroborating details (details which were verified by DEA agents) as to Trujillo's residence and informed Magistrate Judge Scheer of the fact that Julio Trujillo had just been released from prison after serving a sentence for a drug conviction.

Furthermore, the Government contends that the affidavit clearly indicated that the information provided by Campos and Rogensues was reliable and corroborated. Finally, the Government claims that, even had DEA Agent Lynch informed Magistrate Judge Scheer of the fact that Campos and Rogensues had provided inconsistent stories to DEA Task Force Agents Thurston and Powell, the affidavit and application would not have been weakened and still would have been supported by probable cause sufficient to issue the search warrant.

We have previously explained:

This court reviews the sufficiency of an affidavit to determine "whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)(quotation omitted). The affidavit should be reviewed in a commonsense–rather than a

hypertechnical– manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny. *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). The magistrate's determination of probable cause is afforded great deference, and that determination should be reversed only if the magistrate arbitrarily exercised his discretion. *Id.*

*United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "The probable cause requirement . . . is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)(citing *United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975)). Thus, "only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause . . . ." *United States v. Davidson*, 936 F.2d 856, 860 (6th Cir. 1991).

In the instant case, we find that the totality of the circumstances presented in DEA Agent Lynch's affidavit provided Magistrate Judge Scheer with a substantial basis for finding probable cause to search Trujillo's residence. *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984). Accordingly, the district court did not err in denying Trujillo's motion to suppress.

As the district court correctly noted, in her affidavit, DEA Agent Lynch specifically advised Magistrate Judge Scheer

that, after being interviewed separately, Campos and Rogensues provided detailed facts of a conspiracy to distribute marijuana. Specifically, the affidavit represented that Campos and Rogensues were transporting money to Arizona in exchange for marijuana which they would then return to Julio Trujillo whom they contacted *via* his cellular telephone or pager and who instructed them to deliver the marijuana to his residence. Moreover, the affidavit stated that Campos and Rogensues had planned to make five or six more trips to Arizona for the Trujillos in order to obtain marijuana. Finally, DEA Agent Lynch's affidavit contained the fact that a controlled delivery was planned for the same day upon which she sought the search warrant. Thus, we believe that DEA Agent Lynch's affidavit provided probable cause for Magistrate Judge Scheer to issue the search warrant at issue.

As for Trujillo's challenge to the reliability and credibility of Campos and Rogensues and the necessity of an evidentiary hearing prior to the issuance of the warrant, the affidavit clearly indicated that the information provided by Campos and Rogensues was reliable and corroborated. Specifically, DEA Task Force Agents Thurston and Powell were able to verify with law enforcement authorities in Michigan that the Trujillos lived at the address provided by Campos and Rogensues and that Julio Trujillo had recently been released from prison after serving a sentence on a drug charge as stated by Campos and Rogensues. *Franks v. Delaware*, 438 U.S. 154, 165 (1978)(noting that "probable cause may be founded upon . . . information . . . that sometimes must be garnered hastily.").

Finally, as for Trujillo's claim that DEA Agent Lynch acted with reckless disregard for the truth in omitting certain facts from her affidavit, a defendant is entitled to a *Franks* hearing "if and only if : (1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false and (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side."

*United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). Thus, "it is clear that *Franks v. Delaware* requires that, even in such an instance of perjury, the warrant will be voided if the false statement is necessary to establish probable cause. The defendant must prove by a preponderance of the evidence that the affiant's remaining content is insufficient to establish probable cause." *United States v. Barone*, 584 F.2d 118, 121 (6th Cir. 1978).

Here, Trujillo has failed to make a strong showing that DEA Agent Lynch excluded certain facts from her affidavit with an intention to mislead Magistrate Judge Scheer. *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998). In addition, we agree with the district court that, even had DEA Agent Lynch included in her affidavit the fact that Campos and Rogensues had given prior inconsistent statements before pointing to Trujillo as a co-conspirator, these facts would not have negated a finding of probable cause. *Atkins*, 107 F.3d at 1216-17 (denying the defendant's motion for a *Franks* hearing because alleged material omissions were not essential to a probable cause finding); *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)(rejecting the defendant's request for a *Franks* hearing because the alleged material omission bearing on the veracity of the principal informant was not essential to a finding of probable cause). Thus, we affirm the district court's denial of Trujillo's motion to suppress.

B. *RULE 404(B) EVIDENCE*

Prior to the start of trial, the Government filed a notice regarding its intent to use certain evidence, pursuant to Federal Rule of Evidence 404(b), at trial. The Government's notice engendered a motion *in limine* by Trujillo seeking an order from the district court barring the introduction of the Government's Rule 404(b) evidence. At the conclusion of a hearing on the motion, the district court allowed in part and denied in part Trujillo's motion, allowing the admission at

trial of six of the ten types of evidence proffered by the Government.

On appeal, Trujillo has challenged the district court's order with regard to three types of the Government's Rule 404(b) evidence. *First*, Trujillo argues that the district court erred in allowing the Government to introduce evidence that Campos had traveled to Arizona in order to transport marijuana back to Detroit for Trujillo on several occasions prior to the start of the charged conspiracy. *Second*, Trujillo asserts that the district court erred in allowing the Government to introduce evidence that Trujillo had paid Campos to title two automobiles in Campos' name and, then, transfer the title back to her because these alleged acts also occurred prior to the start of the charged conspiracy. *Third*, Trujillo contends that the district court erred in allowing the Government to introduce evidence that Trujillo had threatened Rogensues that, because Campos and Rogensues had cost her $250,000.00, they were going to have to pay for the marijuana.

Trujillo argues that the district court erred in allowing the Government to introduce these three pieces of Rule 404(b) evidence because the district court failed to make any factual determination that any of the alleged actions actually occurred. In addition, Trujillo claims that the district court erred in admitting this Rule 404(b) evidence because the evidence did not assist the jury, because the Government did not introduce the evidence for a legitimate purpose (she never placed her intent at issue), and because the evidence was simply propensity evidence masquerading as Rule 404(b) evidence which was unfairly prejudicial to her. Finally, Trujillo asserts that the district court erred in failing to give a proper limiting instruction to the jury when it admitted the Government's Rule 404(b) evidence.

The Government argues that the district court did not err in admitting the Rule 404(b) evidence because the evidence was admitted for permissible purposes (to show plan, intent,

opportunity, personal involvement, and unexplained wealth) and because the probative value of this evidence was not substantially outweighed by any unfair prejudice. As for Campos' prior marijuana trips for Trujillo, the Government asserts that the evidence was highly probative to demonstrate Trujillo's method of operation, plan, and preparation. As for the title evidence, the Government claims that the evidence established Trujillo's consciousness of guilt, unexplained wealth, motive, and actions in furtherance of the conspiracy. Finally, as for the evidence of a threat, the Government argues that the evidence was admissible to prove Trujillo's intent and consciousness of guilt.

Federal Rule of Evidence 404(b) provides in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." *Id*. In determining whether other acts evidence under Rule 404(b) is admissible, this Court employs a three-part test:

> *First*, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second*, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003)(citing *United States v. Haywood*, 280 F.3d 715, 719-20 (6th Cir. 2002)). "This court reviews a district court's evidentiary determinations under Fed. R. Evid. 404(b) for abuse of discretion. A district court is considered to have abused its discretion when this court is left with the definite

and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *United States v. Copeland*, 321 F.3d 582, 596 (6th Cir. 2003) (internal citations and quotations omitted).

Here, we conclude that the district court did not abuse its discretion in admitting the Government's Rule 404(b) evidence. Although Trujillo argues that the district court failed to make a factual determination that the alleged bad acts occurred, a jury could reasonably have concluded that Trujillo committed the prior bad acts based upon Campos', Rogensues', and Speckman's testimony and based upon the evidence discovered at Trujillo's home pursuant to the search warrant. *Huddleston v. United States*, 485 U.S. 681, 690 (1988). Therefore, the first step in the Rule 404(b) analysis is satisfied.

Likewise, the second step in the Rule 404(b) inquiry is satisfied. Because Trujillo was charged with a specific intent crime, Rule 404(b) evidence was admissible to prove her intent. *E.g.*, *United States v. Spikes*, 158 F.3d 913, 930 (6th Cir. 1998)("[T]his court has held that Rule 404(b) evidence is admissible to prove intent if specific intent is a statutory element of the offense."). Moreover, we agree with the district court that the Rule 404(b) evidence was admissible for proper purposes other than propensity, including plan, opportunity, motive, and unexplained wealth.

Finally, we also agree with the district court that the evidence of Trujillo's prior bad acts was not substantially outweighed by the danger of any unfair prejudicial effect. Fed. R. Evid. 403; *United States v. Myers*, 123 F.3d 350, 362-63 (6th Cir. 1997). Accordingly, the district court did not

abuse its discretion in admitting the Government's Rule 404(b) evidence.[7]

## C.   *SUBSTITUTION OF COUNSEL*

Trujillo argues that the district court abused its discretion in denying her motion to continue the trial so that her new attorney could adequately prepare for trial. Moreover, because she could not obtain new counsel to represent her without the requested continuance, Trujillo asserts that the district court deprived her of her right to counsel of her own choosing and forced her to proceed with the assistance of counsel in whom she had no confidence and who rendered her ineffective assistance. Accordingly, Trujillo contends that she is entitled to a new trial.

The Government argues that the district court made all of the proper and appropriate inquiries of Trujillo as to her dissatisfaction with her attorney and that the district court did not abuse its discretion in denying her request for a continuance of the trial. The Government claims that, due to the lateness of her request, it would have been prejudiced by a continuance and that the basis for Trujillo's request for a substitution of counsel was inadequate. Accordingly, the Government asserts that the district court did not err in denying Trujillo's motion to continue.

---

[7] In her appellate brief, Trujillo contends that, although the district court gave a limiting instruction to the jury prior to deliberations, the district court erred in failing to give the jury an appropriate limiting instruction when the Rule 404(b) evidence was presented. However, Trujillo did not lodge a timely objection to the district court's failure to instruct the jury contemporaneously with the admission of the Rule 404(b) evidence, and there is no plain error here. *United States v. Stines*, 313 F.3d 912, 919 (6th Cir. 2002)("Where a defendant fails to make a timely objection, stating the specific grounds for his objection, our review is limited to plain error."); *United States v. Miller*, 115 F.3d 361, 366 (6th Cir. 1997) (declining to find an abuse of discretion where the district court failed to provide a cautionary instruction at the time of the admission of the Rule 404(b) evidence but did so at the close of the case).

"A motion for new court-appointed counsel based upon defendant's dissatisfaction with his counsel previously appointed is addressed to the sound discretion of the trial court." *United States v. White*, 451 F.2d 1225, 1226 (6th Cir. 1971). We review a district court's denial of a motion for a substitution of counsel for an abuse of discretion. *United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999). In particular, we consider: "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001); *Williams*, 176 F.3d at 314; *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

Here, these four factors weigh in favor of a conclusion that the district court did not abuse its discretion in denying Trujillo's motion to continue. *First*, the motion for substitution of counsel and the motion for a continuance were untimely, coming only three days prior to the scheduled start of the trial. *Jennings*, 83 F.3d at 148 (motion to continue made the day before trial); *Williams*, 176 F.3d at 314 (motion to continue made two weeks before trial). *Second*, the record establishes that the district court made an adequate inquiry into the crux of Trujillo's dissatisfaction with her attorney.

*Third*, Trujillo admitted that her dissatisfaction was based upon her counsel's failure to obtain a suppression of the evidence seized from her home as a result of the search warrant. Because the district court was not going to allow her to reopen the suppression issue, this factor weighs in favor of a denial of the motion to continue. *Fourth*, given the administrative hurdles and costs involved in ensuring the attendance of the Government's witnesses for the trial, the public's interest in the prompt and efficient administration of justice weighed in favor of denying Trujillo's motion to

continue. Accordingly, the district court did not abuse its discretion in denying Trujillo's motion to continue.

### D.   *IMPROPER BOLSTERING OR VOUCHING*

Trujillo argues that she is entitled to a new trial because the Government improperly vouched for and bolstered the credibility of Campos and Rogensues. Specifically, Trujillo asserts that, because the Government had both witnesses highlight to the jury the fact that under the terms of their plea agreements they had to truthfully cooperate or they would be in breach of their agreements, the jury was improperly left with the impression that the Government had some secret method by which to determine whether Campos and Rogensues were telling the truth. Trujillo also claims error based upon Rogensues' testimony that she agreed to submit to a polygraph examination.

In addition, Trujillo contends that the Government's error in improperly vouching for and bolstering Campos' and Rogensues' testimony was exacerbated by the prosecutor's rebuttal argument to the jury. Trujillo claims that the prosecutor's reference to the "truthful testimony" agreements in which Campos and Rogensues had entered was improper because the statement was intended to convey to the jury the prosecutor's opinion that the witnesses' testimony was truthful. Finally, Trujillo argues that the district court erred in failing to give an appropriate cautionary instruction to the jury.

The Government argues that it did not improperly bolster or vouch for Campos' or Rogensues' credibility when the prosecutor referred to the witnesses' plea agreements. On the contrary, the Government notes that the prosecutor limited the questioning of Campos and Rogensues to the existence of their plea agreements and did not suggest the prosecutor's personal assurance or belief as to the veracity or credibility of either witness. Furthermore, the Government asserts that Rogensues' reference to her willingness to take a polygraph

examination was an unsolicited statement which the district court properly determined to be a "non-issue" because Rogensues never took a polygraph test. Finally, the Government claims that the district court's failure to give a cautionary instruction does not constitute plain error, especially in light of the overwhelming proof submitted at trial establishing Trujillo's guilt.

"'Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness. [I]mproper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury . . . .'" *United States v. Martinez*, 253 F.3d 251, 253-54 (6th Cir. 2001)(quoting *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)). On the other hand, "'[b]olstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury.'" *Id*. at 254 (quoting *Francis*, 170 F.3d at 551). "Whether improper vouching amounts to prosecutorial misconduct and whether it renders the trial fundamentally unfair are mixed questions of law and fact reviewable *de novo*." *United States v. Tocco*, 200 F.3d 401, 422 (6th Cir. 2000); *United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993).

In the present case, we find that the prosecutor did not improperly vouch for or bolster Campos' or Rogensues' credibility. Accordingly, no prosecutorial error occurred which entitles Trujillo to a new trial.

During her direct examination, the prosecutor asked Campos the following questions, and Campos gave the following answers:

Q.  Did you plea pursuant to a plea agreement?

A.  Yes.

Q.  Did you receive consideration from the government in exchange for your plea?

A.  Yes.

Q.  Was there a consideration from the government in exchange for truthful cooperation in the case?

A.  Yes.

J.A. 280. Likewise, during her direct examination, the prosecutor asked Rogensues the following questions, and Rogensues gave the following answers:

Q.  What were the charges against you in that case?

A.  Conspiracy to deliver marijuana.

Q.  How did you plead?

A.  Guilty.

Q.  Why was that?

A.  Downward departure for testimony today.

* * *

Q.  Could you tell the jurors what your agreement was with regard to cooperation?

A.  That I would tell the truth. I would be here for pretrial, trial, anything concerning this case, that I admit to a lie detector test.

* * *

A.  I would submit to one – to one, which I will.

J.A. 452, 500-01. Finally, during the prosecutor's rebuttal argument, she made the following statement to the jury:

> Beth Ann Rogensues and Norma Jean Campos are not free. Three months halfway house away from the children, three months on tether, two years probation, and they didn't – they told you during the direct examination that they didn't come here, and they didn't agree they would get on the stand and say whatever the government wanted them to say. They promised to be truthful and provide complete information. Truthful and complete information concerning all individuals with whom they conspired to distribute marijuana, but not limited to Julio or Anna Trujillo. That's what they told you during their examination.

J.A. 203.

As the above citations to the record make clear, the prosecutor did not offer any personal observations or opinions as to the veracity of either Campos or Rogensues, nor did she place the prestige of the Government behind their credibility. Rather, the prosecutor's questions and comments merely encompassed the terms of Campos' and Rogensues' plea agreements which this Court has held to be permissible. *Francis*, 170 F.3d at 550. Thus, the Government did not engage in any improper vouching.

Likewise, the Government did not engage in any improper bolstering. Again, as the above citations to the record reveal, the prosecutor did not imply that either Campos' or Rogensues' testimony was corroborated by any evidence known to the Government but not presented to the jury. *Martinez*, 253 F.3d at 254. Thus, there was no improper bolstering.

Finally, we conclude that the district court correctly characterized Rogensues' unsolicited testimony regarding her willingness to submit to a polygraph test as a non-issue which

did not prejudice Trujillo, and we also conclude that Trujillo has failed to satisfy the plain error standard with regard to the district court's failure to give the jury an appropriate limiting instruction. Accordingly, Trujillo is not entitled to a new trial based upon her claims of prosecutorial misconduct.

E. *ADMISSION OF PRIOR INCONSISTENT STATEMENTS*

During the trial, both Campos and Rogensues testified that they had given statements to DEA Task Force Agents Thurston and Powell during their post-arrest interviews in which they admitted transporting marijuana for Trujillo and her husband. Campos and Rogensues also testified that they provided details to DEA Task Force Agents Thurston and Powell concerning where they delivered the marijuana upon returning to Detroit, where the Trujillos lived, and the fact that Rogensues kept a ledger detailing each trip that she and Campos had made in order to transport marijuana for the Trujillos.

On cross-examination, Trujillo's counsel attacked the truthfulness of Campos' and Rogensues' testimony and attempted to impeach them with their prior inconsistent statements which they gave to Trooper Ortiz and to DEA Task Force Agents Thurston and Powell before settling on the story which they testified to at trial implicating Trujillo.

The Government then called DEA Task Force Agents Thurston and Powell in order to rehabilitate Campos and Rogensues with the statements which Campos and Rogensues had made to them during their post-arrest interviews which were consistent with their trial testimony implicating Trujillo. Trujillo's counsel objected to DEA Task Force Agents Thurston and Powell's testimony regarding Campos' and Rogensues' prior consistent statements on hearsay grounds. Fed. R. Evid. 802. The Government responded that the agents' testimony was admissible because the agents' testimony was offered to rebut Trujillo's charge of recent

fabrication by Campos and Rogensues, and thus, the testimony did not constitute hearsay. Fed. R. Evid. 801(d)(1)(B). The Government cited three cases to the district court in support of its position: *United States v. Hebeka*, 25 F.3d 287 (6th Cir. 1994); *United States v. Smith*, 746 F.2d 1183 (6th Cir. 1984); and *United States v. Hamilton*, 689 F.2d 1262 (6th Cir. 1982). After reviewing the cases cited by the Government, the district court overruled Trujillo's objection and allowed DEA Task Force Agents Thurston and Powell to testify regarding Campos' and Rogensues' statements which were consistent to the testimony which Campos and Rogensues had given at trial.

Accordingly, DEA Task Force Agent Powell testified that, during her interview, Rogensues stated that she was delivering the marijuana which had been seized from the rental vehicle to Julio Trujillo; that the Trujillos had delivered the rental vehicle to Campos and her to be used in transporting the marijuana from Arizona to Detroit; that Campos and she had completed five prior marijuana trips for the Trujillos; and that she was able to remember the dates of those marijuana trips because she kept a daytime ledger in which she noted the states through which Campos and she had driven, the miles logged, the hours each drove, and the total time it took to complete the trips. Similarly, DEA Task Force Agent Thurston testified that, during her interview, Campos told him that she had completed seven trips to Arizona in order to obtain marijuana which she then delivered to the Trujillos in Detroit.[8]

On appeal, Trujillo reasserts her argument that DEA Task Force Agents Thurston' and Powell's testimony constituted inadmissible hearsay, and therefore, the district court committed prejudicial error by allowing them to testify

---

[8] The district court also allowed DEA Agent Lynch to offer testimony concerning the prior consistent statements given to her by Campos and Rogensues.

regarding Campos' and Rogensues' prior consistent statements. Trujillo argues that the cases cited by the Government and relied upon by the district court are no longer good law in light of the United States Supreme Court's holding in *Tome v. United States*, 513 U.S. 150 (1995), and this Court's holding in *United States v. Toney*, 161 F.3d 404 (6th Cir. 1998). Trujillo contends that Campos' and Rogensues' motive to lie arose when they were arrested by Trooper Ortiz in Colorado, and thus, under the holdings of *Tome* and *Toney*, the district court committed reversible error in allowing the Government to rehabilitate Campos and Rogensues *via* DEA Task Force Agents Thurston and Powell's testimony.

The Government claims that the district court did not err in allowing DEA Agents Thurston and Powell to offer testimony in an attempt to rehabilitate Campos and Rogensues because the agents' testimony was offered to rebut Trujillo's charge of recent fabrication. In essence, the Government contends that Trujillo opened the door to this testimony by implying during the cross-examination of Campos and Rogensues that they were lying and that they had been improperly influenced by their plea agreements with the Government.

Federal Rule of Evidence 801(d)(1)(B) provides: "A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . ." *Id*. "A district court's determination of whether evidence constitutes hearsay under the Federal Rules of Evidence is a conclusion of law that is reviewed *de novo*." *Cox v. Treadway*, 75 F.3d 230, 238 (6th Cir. 1996)(citing *Hancock v. Dodson*, 958 F.2d 1367, 1371 (6th Cir. 1992)).

In the instant case, the district court committed error when it employed the wrong test in resolving Trujillo's hearsay

objection. As noted by Trujillo, the district court neither cited to nor referenced *Toney* or *Tome* in reaching its decision to overrule Trujillo's hearsay objection. As such, the district court never rendered a factual finding as to when Campos and Rogensues formed a motive to lie.[9] Thus, the question which we must answer is whether the district court properly admitted this evidence despite the district court's flawed reasoning.

In order for DEA Task Force Agents Thurston's and Powell's testimony not to be considered hearsay under Rule 801(d)(1)(B): (1) Campos and Rogensues had to testify and been subject to cross-examination; (2) Trujillo had to expressly or impliedly charge recent fabrication or improper influence or motive by Campos and Rogensues during their testimony; (3) the Government had to offer a prior consistent statement that was consistent with the Campos and Rogensues challenged in-court testimony; and, (4) Campos' and Rogensues' prior consistent statements must have been made prior to the time that their supposed motive to lie arose.[10] *Toney*, 161 F.3d at 407; *Tome*, 513 U.S. at 167. The only factor which is at issue in the instant appeal is the last one, *i.e.* whether the statements which Campos and Rogensues made to DEA Task Force Agents Thurston and Powell which were consistent with their trial testimony were made before they had formed a "motive to lie."

Based upon our review of the record, we conclude that Campos' and Rogensues' prior consistent statements were made after they had formed their motive to lie. It is simply

---

[9] "The district court's determination of when the motive to lie arose is a factual finding, which we review under the 'clearly erroneous' standard." *Toney*, 161 F.3d at 408.

[10] The fact that the Government presented the evidence of Campos' and Rogensues' prior consistent statements through DEA Task Force Agents Thurston and Powell's testimony rather than from Campos and Rogensues themselves is of no consequence. *Hebeka*, 25 F.3d at 293.

not believable to suggest that, a day or two after Campos and Rogensues were stopped with more than fifty kilograms of marijuana in their car and were subsequently arrested, they did not have a motive to lie, regarding the source of the marijuana, in order to get lenient treatment.[11] *See United States v. Esparza*, 291 F.3d 1052, 1055 (6th Cir. 2002)(finding testimony made at the time of an arrest inadmissible because "Esparza had the same motive to lie at the time of his statement to the officer as he did at the trial, and so his statement was not admissible to rebut a charge of recent fabrication."). Accordingly, we find that the district court erred in admitting the hearsay statements in question.

Nevertheless, we also find that this error does not warrant a reversal. In order to merit a reversal, this error must be shown not to have been harmless, *i.e.*, that it was more probable than not that the error materially affected the verdict. *United States v. Hernandez*, 227 F.3d 686, 696 (6th Cir. 2000). We conclude that the district court's admission of the hearsay statements constituted harmless error.

*First*, the error was harmless because the inadmissible hearsay testimony was effectively impeached. After DEA Task Force Agent Thurston gave his testimony recounting the hearsay statements made by Campos and Rogensues, Trujillo's counsel, at length, impeached the credibility of the stories given by Campos and Rogensues to DEA Task Force Agent Thurston. *See* J.A. at 569. DEA Task Force Agent Thurson admitted that Campos and Rogensues were in the room together at one point when the details of their stories

---

[11] Within two days of being arrested and giving custodial statements, Campos and Rogensues attempted to cooperate with the police in arranging for the delivery of the marijuana to Trujillo and her husband in a manner which would have incriminated both. *E.g.*, J.A. at 331 (on cross-examination, Trujillo's counsel asked, "And then you ended up coming back here, and you were arraigned after you were unable to set up the Trujillos, correct?," to which Campos responded, "Yes.").

were clarified–which indicates that their stories differed earlier–thereby, impeaching Campos' and Rogensues' stories.

In addition, DEA Task Force Agent Thurston was unable to deny Trujillo's attorney's assertion that Campos had been so distressed upon her arrest that she was crying when she was in custody. *Id.*  More importantly, DEA Task Force Agent Thurston agreed that Campos' and Rogensues' stories only implicated Trujillo in a very minor role when compared to that of her husband, Julio. *See* J.A. at 573-74.

*Second*, the error was harmless because Trujillo's counsel effectively impeached the two witnesses whose testimony was buttressed by the inadmissible hearsay.  Trujillo's counsel impugned the motives of Campos and Rogensues during his examination of them and which the jury could have recalled upon hearing DEA Task Force Agent Thurston's testimony.

*Third*, the Government presented other significant admissible evidence which confirmed Trujillo's involvement in marijuana trafficking activities.  For example, Shawn Speckman's testimony indicated Trujillo's involvement in drug trafficking activities, and DEA Agent Lynch testified as to having found, at Trujillo's residence, "phone books with names, . . . two scales, in addition to a cellular telephone and pager, fax machine, all have information and phone numbers linking to the crime." J.A. at 356.

Accordingly, in light of the other admissible evidence presented by the Government during the trial and Trujillo's attorney's effective impeachment of DEA Task Force Agent Thurston, Campos, and Rogensues, it is not probable that, even without the improper admission of the prior consistent statements of Campos and Rogensues, Trujillo would have been acquitted.  As such, the district court's improper admission of DEA Task Force Agents Thurston's and Powell's hearsay statements was harmless and does not require a reversal of Trujillo's conviction.

F.   *MOTION FOR A MISTRIAL*

Prior to the start of trial, the district court ruled that there could be no mention of any marijuana found in the possession of Thomas Hysell where the Government could not prove that the marijuana recovered from him came from Trujillo's home. Because Hysell did not testify at trial, the district court's order resulted in the exclusion of any reference to the marijuana obtained from him after he had met Speckman at the Trujillo's home on the night of November 16th.

During the trial, the prosecutor questioned Speckman about what had transpired when Hysell visited Trujillo's residence just before DEA agents searched the residence pursuant to a search warrant–allegedly trying to imply that Hysell had purchased marijuana from Trujillo.  After Trujillo's counsel objected, the district court cautioned the prosecutor not to let the witness testify regarding the marijuana seized from Hysell.

Subsequently, while DEA Agent Anthony Bryndza was testifying, the prosecutor inadvertently tendered an exhibit consisting of marijuana taken from Hysell the night that he went to Trujillo's home and met with Speckman.  The prosecutor's reference to the exhibit caused Bryndza to refer to the marijuana and attribute it to Hysell.  Trujillo's counsel immediately moved for a mistrial, but the district court denied the motion, admonished the witness, and instructed the jury to disregard any references to the exhibit or testimony regarding the marijuana attributed to Hysell.

Trujillo argues that the district court abused its discretion in denying her motion for a mistrial based upon the Government's witnesses' references to the marijuana obtained from Hysell in violation of the district court's order excluding this evidence.  Trujillo contends that the prosecutor's violation of the district court's order was flagrant and highly prejudicial. Accordingly, Trujillo asserts that the prosecutor's improper implication to the jury that she lived at a house

frequented by individuals who possessed marijuana entitled her to a new trial, and therefore, the district court erred in denying her motion for a mistrial.

The Government argues that, contrary to Trujillo's assertion otherwise, the complained of remarks were not flagrant. In fact, the Government notes that the references to the marijuana possessed by Hysell were made by a witness, not the prosecutor, and therefore, the witness' comments should not be attributed to it. Accordingly, the Government claims that the district court did not abuse its discretion in denying Trujillo's motion for a mistrial.

"We review for abuse of discretion the district court's denial of a motion for mistrial." *United States v. Yang*, 281 F.3d 534, 549 (6th Cir. 2002). "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994). Deference is given to the district court because "[t]he trial judge is in the best position to determine the nature of the alleged jury misconduct . . . [and] is also in the best position to determine appropriate remedies for any demonstrated misconduct." *United States v. Copeland*, 51 F.3d 611, 613 (6th Cir. 1995).

As we have previously explained:

When reviewing claims of prosecutorial misconduct, we determine first whether the statements were improper. *See United States v. Krebs*, 788 F.2d 1166, 1177 (6th Cir. 1986). If they appear improper, we then look to see if they were flagrant and warrant reversal. *See United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994). To determine flagrancy, the standard set by this Court is: 1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence

against the accused. *United States v. Monus*, 128 F.3d 376, 394 (6th Cir. 1997)(citing *United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir. 1996)); *Carroll*, 26 F.3d at 1385 (citing *United States v. Leon*, 534 F.2d 667, 679 (6th Cir. 1976)). To reverse a conviction because of an improper non-flagrant statement, a reviewing court must determine that: 1) the proof of the defendant's guilt is not overwhelming; 2) the defense counsel objected; and 3) the trial court failed to cure the impropriety by failing to admonish the jury. *Monus*, 128 F.3d at 394; *Carroll*, 26 F.3d at 1385-86 (citing *United States v. Bess*, 593 F.2d 749, 757 (6th Cir. 1979)).

*Francis*, 170 F.3d at 549-50.

In the case *sub judice*, we find that the district court did not abuse its discretion in denying Trujillo's motion for a mistrial. Although the reference to the marijuana recovered from Hysell was improper because it violated the district court's pre-trial order, we do not believe the reference was flagrant or requires a reversal. Our review of the record leads us to believe that reference was accidental, did not mislead the jury or prejudice Trujillo, and was an isolated statement. Moreover, immediately after the improper statement by Bryndza, the district court properly admonished the jury, and we cannot say that the other evidence of Trujillo's guilt is so insubstantial that a reversal is required in light of this improper reference. Accordingly, the district court did not abuse its discretion in denying Trujillo's motion for a mistrial.

### G.   *CUMULATIVE ERROR*

Trujillo argues that, even if no single assignment of error is sufficient to warrant a new trial, the totality of errors deprived her of her constitutional right to a fair trial. Accordingly, Trujillo asks us to grant her a new trial based upon a theory of cumulative error.

The Government argues that, because Trujillo has failed to demonstrate that the district court committed any individual errors, her claim of cumulative error fails. In any event, the Government claims that Trujillo has failed to demonstrate that Trujillo was deprived of her right to a fair trial as a result of any of the district court's rulings.

In order to obtain a new trial based upon cumulative error, a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair. *United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993). This is so because "errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone . . . may cumulatively produce a trial setting that is fundamentally unfair." *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000)(citing *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983))(internal quotation marks omitted).

However, the only error committed by the district court was in admitting some hearsay statements made by DEA Task Force Agents Thurston and Powell. We have found this error to be harmless, and Trujillo has failed to identify any other error committed by the district court which could be combined with this harmless error in order to support a finding of cumulative error and which would rise to the level of fundamental unfairness. *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990)(holding that "a cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."). In short, there is no showing in the record in this case that Trujillo was denied a fundamentally fair trial. *United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir. 1988). Accordingly, Trujillo is not entitled to a new trial based upon her claim of cumulative error.

## H.   *ORGANIZER/LEADER ENHANCEMENT*

Finally, Trujillo argues that, at a minimum, she is entitled to a new sentencing hearing because the district court erred in enhancing her offense level by two levels, pursuant to U.S.S.G. § 3B1.1(c), for being an organizer or leader in the conspiracy. Trujillo asserts that the evidence presented during her trial clearly established that the leader of the conspiracy was her husband, Julio, and that the only actions which she allegedly took in furtherance of the conspiracy was to rent cars for Campos and Rogensues to be used in the transportation of marijuana. Accordingly, Trujillo asks the Court to remand this matter for re-sentencing with directions to the district court that she not receive a two-level enhancement for being an organizer or leader.

The Government contends that the evidence presented at trial proved that Trujillo exercised control over Campos and Rogensues. Accordingly, the Government claims that the district court did not err in enhancing Trujillo's base offense level by two pursuant to U.S.S.G. § 3B1.1(c).

Title 18 U.S.C. § 3742(e) provides that courts of appeals "shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." *Id.*; *United States v. Jackson-Randolph*, 282 F.3d 369, 389-90 (6th Cir. 2002). U.S.S.G. § 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels." *Id.* (emphasis in original). Thus, the Sentencing Guidelines provision "requires a sentencing court to enhance a sentence [by] two levels if the court finds that the accused served in a managerial or supervisory role during the criminal activity." *Jones v. United States*, 161 F.3d 397, 399 (6th Cir. 1998).

In the present case, the evidence presented by the Government at trial clearly established that Trujillo exercised

control, supervision, and management over Campos and Rogensues. Trujillo recruited Campos to transport the marijuana across the country for her; she provided transportation for Campos to do so; she provided instruction as to who and where to meet in order to obtain the marijuana; and she instructed Campos and Rogensues concerning how to handle the marijuana upon their return to Detroit, *i.e.*, she instructed them to "bring in the babies from the cold so that they won't get cold" which Campos understood as coded language instructing her to bring the marijuana into Campos' house. Accordingly, based upon the evidence presented at trial, we find that the district court did not clearly err in denying Trujillo's objection to the two-level enhancement which she received, pursuant to U.S.S.G. § 3B1.1(c), for being an organizer or leader of the charged conspiracy.

### III. CONCLUSION

Accordingly, for the reasons set forth above, we **AFFIRM** the judgment and the sentence imposed upon Trujillo by the district court.