File Name: 08a0038n.06

Filed: January 10, 2008

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 06-6052

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RONNIE LARKINS,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

_____/

Before:      MARTIN, GIBBONS, and SUTTON, Circuit Judges.

      BOYCE F. MARTIN, JR., Circuit Judge. Ronnie Larkins was convicted of conspiracy to possess with intent to distribute fifty grams or more of pure methamphetamine, a schedule II controlled substance. He appeals his conviction, alleging that the district court erred in allowing the government to present testimony regarding prior consistent statements, allowing evidence of Larkins's history of marijuana sales, and taking judicial notice of a conversion factor without issuing a limiting instruction. Although we find that the admission of prior consistent statements in this case may have been error, we affirm the district court on the other two rulings and find that any error was harmless in light of the evidence presented. Accordingly, we AFFIRM Larkins's conviction.

I.

The facts presented at trial were as follows. In or around 1996, Ronnie Larkins developed a business relationship with Manuel Lopez, who transported marijuana from Mexico to Kentucky. About two years into their relationship, Larkins told Lopez that he wanted to expand the business to methamphetamine, and that his nephew David had contacts who would buy it. Thereafter, Lopez began bringing methamphetamine – separate from and in addition to the marijuana – to Larkins's farm, to be distributed from there.

The methamphetamine had been of poor quality for some time by the spring of 2003, when Larkins and David decided to send Warren Staples, a methamphetamine user, with Larkins to sample the drugs prior to purchase. Staples flew to Mexico with Larkins, met with Lopez, and sampled the drug. Larkins and Lopez then agreed on a purchase. While in Mexico, the three took a number of photos of themselves, which the government submitted into evidence at trial. Larkins made another trip to Mexico in August 2003 with a more experienced tester named Terry Bivens, and another trip in January 2004. After this January trip, Larkins was cut out of the loop as a business partner.

One year later, DEA agents began interviewing the various co-conspirators about their involvement with the methamphetamine and marijuana trafficking. David Larkins was interviewed by DEA agents on January 14, 2005 and March 3, 2005. Warren Staples was interviewed on March 18, 2005, and interviews with Terry Bivens and Manuel Lopez were taken in January 2006.

At Larkins's trial, the government submitted testimony from Lopez, Staples and Bivens. The government also submitted testimony about the content of pretrial interviews with co-conspirators from the DEA case agent who had done the interviews. Larkins also testified at his trial, admitting that he had taken several trips to Mexico and Texas. He said that although he knew that his travel

companions were methamphetamine addicts, he did not know of any drug transactions. He alleged

instead that his primary purpose on the trips was to collect arrowheads and marbles and to go to strip

clubs. He further maintained that he was never involved in the trafficking of marijuana. At the end

of the trial, the district court instructed the jury that they must determine the amount of

methamphetamine used in the crime, and then took judicial notice that one pound is equal to 453.6

grams. Larkins objected to the judicial notice of this conversion rate, but did not request a limiting

instruction telling the jury that it was not required to accept this fact as true. The jury convicted him

of conspiracy to possess with intent to distribute 50 grams or more of pure methamphetamine, and

he was sentenced to 288 months in prison.

Larkins alleges that there were several errors committed at trial. First, Larkins argues that

testimony from the DEA agent about the content of his interviews with the co-conspirators was

inadmissible hearsay. Second, Larkins argues that the district court should not have permitted

testimony about Larkins's prior marijuana scheme under Federal Evidence Rule 404(b). Finally,

Larkins argues that the district court should not have taken judicial notice of the conversion rate

between pounds and grams.

A district court's evidentiary rulings are reviewed for abuse of discretion. *Beck v. Haik*, 377

F.3d 624, 636 (6th Cir. 2004). If a reviewing court finds error in the proceedings, reversal is not

warranted if the United States can demonstrate that the error was harmless. *United States v. Hasting*,

461 U.S. 499, 509 (1983).

II.

*1) Prior Consistent Statements*

A prior statement of a witness is not hearsay and may be used as substantive evidence when it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." FED. R. EVID. 801(d)(1)(B). The Supreme Court has explained that this provision includes the requirement that the prior statement must have been made before the witness's motive to fabricate arose. *Tome v. United States*, 513 U.S. 150, 167 (1995).

At trial, DEA agent Atkins testified about the content of his investigation interviews with David, Staples, Bivens, and Lopez. Larkins claims that Atkins should not have been allowed to repeat what he had been told in the interviews, and such testimony was inadmissible hearsay. The government contends that the statements were properly admitted as substantive evidence under 801(d)(1)(B) to rebut the charge of a conspiracy to frame Larkins, after Larkins's counsel called the co-conspirators' statements into question by saying that the witnesses wanted "to nail [Larkins] to save themselves, and we're going to prove motive here . . . . [The government] is relying on these convicted felons who have pled guilty to say that it's true. And I tell you it may be a conspiracy within them."

Because the district court made no finding as to when the co-conspirators' motives to lie arose, the admission of the statements may have been in error if admitted under FED. R. EVID. 801(d)(1)(B). However, any such error in this case was harmless in light of the other evidence presented and the effective impeachment of the witnesses and their statements at trial.

Error in the admission of impermissible hearsay testimony can be harmless if the testimony is effectively impeached. *United States v. Trujillo*, 376 F.3d 593, 611 (6th Cir. 2004). First, the credibility of the interview statements was effectively impeached when Agent Atkins admitted that the witnesses may not have told the truth to investigating agents and that there were no tape recordings of the conversations, only reports written up to several days after the interviews. Second, each of the witnesses was impeached when questioned about his plea agreement, and the jury was aware that each had a potential reduction in sentence as a result of his testimony. *See United States v. Jones*, 766 F.2d 994, 1004 (6th Cir. 1985) (witnesses effectively impeached when jury knew that witnesses testified pursuant to a plea agreement, with motions for reduction of sentence still pending). One of the witnesses, Lopez, also admitted lying to the police during the investigation, further calling his testimony into question.

More important than the impeachment of the hearsay, however, were the government's persuasive evidence against Larkins at trial and Larkins's unbelievable defense. First, the government presented a list, seized from Lopez, that contained the phone numbers of the conspiracy members and included Larkins's number. It also presented flight records from Southwest Airlines showing the chronology of Larkins's travels with the co-conspirators, and the photographs of Larkins with the co-conspirators in Mexico. Larkins's only explanation for these trips was that he went to Mexico to collect arrowheads and marbles and to patronize strip clubs.

We find that the weight of other evidence, combined with the effective impeachment of the arguably hearsay testimony, makes any error by the district court in admitting Agent Atkins's statement harmless.

*2) Evidence of past marijuana sales*

At trial, the government presented testimony about the co-conspirators' alleged scheme to traffick in marijuana, and how that scheme grew into a methamphetamine business. The district court allowed the evidence of the marijuana scheme as *res gestae*, or background, evidence. Larkins does not dispute the *res gestae* ruling and addresses it nowhere in his initial brief. Instead, he now alleges that the evidence should not have been admitted under Rule 404(b) of the Federal Rules of Evidence.

In order to be admitted, *res gestae* evidence must have a temporal, causal, or spatial connection to the other acts and the charged offense. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Because Larkins offers no evidence that the connection between the (background) marijuana conspiracy and the (charged) methamphetamine conspiracy fails to meet this standard or that the judge erred in this determination, we decline to overrule the district court's admission of the evidence.

Even under Rule 404(b), the evidence would be admissible. The rule states that evidence of past crimes may be admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. FED. R. EVID. 404(b). Many of these factors were present here: the past conspiracy showed motive (expanding an already profitable business), opportunity (showing Larkins's contacts in the drug trade), and preparation (showing the development of the business from marijuana to methamphetamine). As such, the district court did not abuse its discretion in admitting the evidence.

*3) The jury instructions*

At trial, the district court's jury instructions included the following statement: "You are instructed that one pound is equal to 453.6 grams." It gave no limiting instruction stating that the jury was permitted, but not required, to accept this fact as true. Larkins argues that the statement allowed the judge to effectively direct a verdict. This misstates both the law and the nature of the instruction.

The Federal Rules of Evidence permit judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed. *Id.* at (g). In *United States v. Mentz*, this Court ruled that "[a] trial court commits constitutional error when it takes judicial notice of facts constituting an essential element of the crime charged, but fails to instruct the jury according to rule 201(g)." 840 F.2d 315, 322 (6th Cir. 1988).

Clearly, the judicial notice itself was proper. In *United States v. Robinson*, we noted that "we are confident, despite Robinson's objection, that the district court properly took judicial notice of the appropriate multipliers for converting between pounds, grams, and kilograms. We are not aware that this is a matter 'subject to reasonable dispute,' [under] FED. R. EVID. 201(b)." 390 F.3d 853, 877 n.35 (6th Cir. 2004).

As for the court's failure to issue a limiting instruction, the rule in *Mentz* applies only to facts constituting an essential element of the crime. Here, the fact judicially noticed was not an essential element; rather, it was simply an interpretation of a federal statute that gives weight in grams.

Although the weight of the drugs ultimately found by the jury is an essential fact, the instruction did not subvert this by giving a simple weights-and-measures conversion.

### III.

Because any possible error committed by the district court was harmless, and because the district court did not abuse its discretion in either its evidentiary rulings or jury instructions, we AFFIRM the conviction.