RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0424p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

THOMAS DAVIS,

　　　　　　*Petitioner-Appellee*,

　　　*v.*

RAYMOND BOOKER, Warden,

　　　　　　*Respondent-Appellant.*

No. 09-1140

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-75063—Arthur J. Tarnow, District Judge.

Argued: November 19, 2009

Decided and Filed: December 15, 2009

Before: MERRITT, GIBBONS, and McKEAGUE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Brian O. Neill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Joan Ellerbusch Morgan, Sylvan Lake, Michigan, for Appellee. **ON BRIEF:** Brian O. Neill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Joan Ellerbusch Morgan, Sylvan Lake, Michigan, for Appellee.

———————————

**OPINION**

———————————

　　MERRITT, Circuit Judge. In 1998, Thomas Davis and John Wilder were in a car attempting to purchase drugs from Troy Prewitt when one of them shot and killed Prewitt. Davis, the habeas petitioner here, was charged with murder in Michigan state court and convicted by a jury. The main factual question at trial was whether Davis or Wilder was the shooter. Wilder was a key witness against Davis at trial and testified that Wilder was merely

driving Davis to buy drugs and had no intention of killing Prewitt. Davis claimed that their roles were reversed.

The main questions now before us, decided in Davis's favor by the District Court below, are (1) does Davis have any significant evidence that a potential, uncalled witness, Todd Selma, would have testified that Wilder confessed to the shooting, and (2) did the prosecutor improperly vouch for Wilder's credibility by noting that Wilder had been charged only as an accessory after the fact and not as an accomplice to the murder. With regard to the first question, we find that the only significant evidence in the record showing what Selma would have testified, if produced, is a letter that actually implicates Davis, not Wilder, for the shooting. Hence, we conclude that it is clear from the record that Davis was not prejudiced by his lawyers' failures to locate and call Selma. With regard to the second question, we conclude that the prosecutor's statements did not constitute improper vouching because Wilder's charge was in the record and his personal interest in the case was obvious to the jury.

We, therefore, reverse the issuance of the writ of habeas corpus by the District Court.

## I. FACTS

The testimony at trial showed that Wilder and Davis drove to a parking lot to purchase drugs, with Wilder driving and Davis in the passenger seat. They attempted to buy drugs from Derrick Glaze "on credit," but Glaze refused. Troy Prewitt, another dealer, entered the parking lot and also refused to sell them drugs on credit. As Prewitt stood next to the passenger side of the vehicle, Davis grabbed the drugs. Wilder slowly drove away as Prewitt ran alongside the car to retrieve his drugs. Davis then shot and killed Prewitt. These facts are not in dispute except insofar as Davis claims that his role and Wilder's were reversed.

The prosecution's evidence at trial consisted primarily of testimony from Wilder and Glaze and two other eyewitnesses, Wendell Wilson and Dean Rochelle. Credibility was an issue with each of these witnesses. Wilder was in the car with Davis for the purpose of buying drugs and later gave a questionable story to police. He pleaded guilty to being an accessory after the fact and was sentenced to probation. Glaze was an admitted drug dealer

and gave questionable testimony, including that he observed a black woman in the car. He also did not tell police that he saw who fired the gun or that he saw Davis with a gun. Wilson could not tell whether the driver or passenger fired or even how many people were in the car. Rochelle was a drug dealer. During cross-examination, Rochelle admitted that, on the day he gave a statement to police regarding this case, he also gave a statement regarding another murder case. He also stated that the information he gave regarding the other murder case was fabricated because he was pressured by police.

After a trial, Davis was convicted by a jury of second-degree murder and possession of a firearm during the commission of a felony. He was sentenced as a habitual offender to 30 to 60 years' imprisonment for the murder conviction, to be served consecutively to two years' imprisonment for the felony-firearm conviction. His conviction and sentence were affirmed on appeal.

Davis's initial petition for habeas corpus relief was denied for failure to exhaust his ineffective assistance of appellate counsel claims in state court. Davis returned to federal court after the state court denied these claims. In response to Davis's eight habeas claims, the District Court conducted an evidentiary hearing and ultimately granted relief on the grounds that Davis "was deprived of his right to the effective assistance of trial and appellate counsel and because the prosecutor committed misconduct." *Davis v. Booker*, 594 F. Supp. 2d 802, 805 (E.D. Mich. 2009). In granting habeas relief, the district court specifically found that: (1) Davis's trial counsel was ineffective for failing to locate and interview Selma; (2) Davis's appellate counsel was ineffective for failing to locate and interview Selma; (3) Davis's trial counsel was ineffective in failing to meet privately with Davis until eight days before trial, and so failing to learn about Selma's allegedly critical comments; (4) Davis's trial counsel was ineffective for failing to request criminal histories for prosecution witnesses and failing to impeach Wilder with evidence of a prior conviction for retail fraud; and (5) the prosecutor engaged in misconduct by improperly vouching for Wilder's credibility. *Id.* at 805-06, 819-20.

The central issue respecting the failure to call the witness, Todd Selma, arises because Davis claims that he, Wilder and Selma were in jail together where Wilder

confessed to the murder to Selma. The District Court believed that the writ of habeas corpus must issue because of the following circumstances described in the District Court's opinion:

> The record shows that the information regarding Selma's potential testimony was supplied to and available to counsel at least several months prior to trial in the form of Petitioner's verbal statements to counsel and the *pro se* motion filed in the trial court regarding representation by Petitioner's first court-appointed attorney. Yet, counsel waited until eight days prior to trial to try to locate this witness. He relied upon a police investigator to locate Selma without tapping a resource at his disposal, an investigator already approved by the court.

> The Michigan Court of Appeals held that Petitioner failed to show that counsel was ineffective in failing to locate Selma or that Petitioner was prejudiced by this failure. The state court rested its conclusion on the absence of any testimony at the *Ginther* hearing that (i) Selma would have been available to testify, (ii) the prosecutor and police failed to use due diligence to locate Selma. The state court did not address counsel's failure to utilize the investigator, counsel's general obligation to investigate and prepare a defense, or the fact that Selma was on probation at the time trial counsel admitted to first hearing his name.

> . . . .

> In this case, an attorney acting competently, would have attempted to locate and interview Todd Selma when initially made aware of his potential testimony. In addition, an attorney acting competently would have discovered that the trial court had approved a private investigator and would have utilized that investigator to attempt to locate Selma rather than relying on police, and would have attempted to ascertain the identity of any additional potential witnesses to the shooting. The requirement that an attorney conduct a reasonable investigation requires that an attorney commence investigation far enough in advance of trial to allow for time to pursue leads, interview witnesses and develop a defense strategy. While defense counsel in this case developed a defense strategy, attempting to inculpate Wilder as the shooter, he failed to investigate and develop any facts which would have supported that theory. In addition, at the state court evidentiary hearing, the trial court judge noted that Selma was on probation through June 25, 1999. Thus, if trial counsel had undertaken prompt and diligent efforts, Selma could have been easily located while either incarcerated or serving a term of probation.

> . . . .

> Respondent argues that Petitioner fails to establish prejudice in counsel's failure to call Selma as a witness for two reasons: because a letter purportedly written by Selma in 2002 incriminates Petitioner and because

> Petitioner has presented no evidence to show how Selma would have testified at trial.
>
>     First, Petitioner has produced a copy of a March 26, 2002 letter purportedly written by Todd Selma to Petitioner. The substance of the letter is confused. Selma appears to simultaneously profess Petitioner's innocence while placing blame for the shooting on someone from New York. Considerable testimony was presented at the evidentiary hearing to show that Petitioner was called "New York" by several fellow prisoners. In the letter, Selma admits that he does not fully remember the details of his 1998 encounter with Wilder. The letter was written over three years after Selma's contact with Wilder at the Inkster County Jail. While the letter does not clearly and unequivocally exculpate Petitioner neither does it, as Respondent alleges, clearly and unequivocally inculpate him. Instead, the letter raises additional questions, including whether Selma believed that he was, as Respondent argues, writing to Wilder rather than Petitioner, whether Selma thought Wilder was known as "New York;" and whether Selma would have been able to clarify these ambiguities had he been located prior to trial. These questions may have been answered had counsel undertaken a vigorous, effective search for Selma.

*Davis v. Booker*, 594 F. Supp. 2d 802, 805 (E.D. Mich. 2009).

We present our disagreement with the District Court in the next section. We do not take issue with the District Court on the issue of counsel's deficient performance. Rather we disagree on the issue of prejudice because the letter in the record from Selma indicates that Selma's testimony would have been extremely harmful to Davis's case.

## II. ANALYSIS

### 1. Ineffective Assistance of Counsel — Failing to Have Todd Selma Testify

Several of the District Court's findings concern the missing testimony of Todd Selma, who allegedly heard Wilder confess to the shooting. Contrary to the decision of the Michigan Court of Appeals, the District Court held that Davis's trial and appellate counsel were ineffective for failing to locate and obtain testimony from Selma. The District Court also held that Davis's trial counsel was ineffective for failing to meet with Davis until eight days before trial, and so failing to learn about Selma's supposedly vital comments until it was too late to find Selma before the trial. All three of these findings depend upon the assumption that Selma, had he been located, would have testified that it was Wilder and not Davis who shot Prewitt.

There is evidence that both lawyers were deficient. The District Court believed that a pro se motion filed by Davis that included Selma's name should have made trial counsel aware of Selma's potential testimony several months before the trial. Although trial counsel read the motion, he admitted that he did not learn of Selma's existence until he met with Davis — for the very first time — just eight days before the trial. Trial counsel then asked the police officer in charge of the case to locate Selma but did not know what steps were taken to locate him. Trial counsel was unaware that an investigator had been approved for his use by the court. Because Selma was on probation, before and during the trial, he presumably could have been located with a reasonable search.

At the habeas evidentiary hearing, appellate counsel testified that the only effort he made to locate Selma was to call a telephone number given to him by Davis, but he did not receive a response. He did not provide any reason for failing to take further steps but testified that it was his "understanding that, if called to testify at trial, Selma would have testified that Wilder confessed to being the gunman." *Davis*, 594 F. Supp. 2d at 819-20.

Whatever the deficiencies by Davis's attorneys for failing to locate and call Selma, Davis must also show that, had Selma testified, the result of his trial would have been different with a "probability sufficient to undermine the confidence in the outcome." *Avery v. Prelesnik*, 548 F.3d 434, 438 (6th Cir. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Davis claims, and the District Court found, that Selma would have testified that Wilder confessed to Selma that Wilder — not Davis — shot the victim. This Court need not consider the impact that such an alleged confession might have had at trial because there is no real evidence that Selma would have actually implicated Wilder and exonerated Davis had Selma testified.

Neither the District Court opinion nor Davis's brief sets out what Selma actually knew and how he knew it. From the Warden's brief, we learn that Davis's claim is based on two sources. First, Davis testified at a state court evidentiary hearing that while Davis, Wilder, and Selma were all in a lineup in 1998, Wilder confessed to Selma that Wilder killed Troy Prewitt. Moreover, according to Davis, Selma told Davis that Selma would testify if Wilder did not confess to police. (Resp. Br. at 19.) Second, and most importantly, Selma wrote Davis a letter in 2002 which reflects not only his confusion about to whom he is

writing but also his belief that a "guy from New York" was the shooter. Because Davis, as he acknowledges in his brief, is the only person involved in the case from New York, it is clear that Selma, if he had testified consistently with his letter, would have destroyed Davis's defense:

> Dig man, sorry to hear that you got railroaded like you did, that's . . . up. But dig man, I'd like to help you as much as possible, and **if you're the guy I then talked to in Inkster then yeah I can honestly say that no you didn't shoot Troy** based on my own investigation. What I'm trying to say is I don't remember hearing the truth like in the affidavit as you have it. **At present my version is pretty vague, but I do remember that some guy from New York is the one who shot Troy. And if I'm not mistaken, you were driving and he was on the passenger's side and reached over and shot Troy after he refused y'all some credit.**
>
> I also remember the line-up, the glasses, and the guy in the county greens wearing the glasses. We were all in that small cell by the kitchenette of Inkster jail. I don't fully recall the ride back and forth from and to the County jail. Dig man, I wanna help you and I'm tryin my best to remember as much of that day as I can, but honestly, I'm not doing too well. I don't know how much time you have to correct the wrong but I'm gonna need a bit more. It's coming back to me in scattered pieces.
>
> I remember something about somebody putting on a dress and sneaking next door when the police showed up. **I also remember the guy from New York saying that "he couldn't admit to killin Troy but he would testify that you didn't do it. That he had been to the joint once before and he wasn't going back." Oh yeah: I remember me asking him why did he shoot Troy and he said he didn't know.**

(Resp. Br. at 21) (emphasis added).

The District Court noted that "[t]he substance of the letter is confused [because] Selma appears to simultaneously profess [Davis's] innocence while placing the blame for the shooting on someone from New York." *Davis*, 594 F. Supp. 2d at 817. Thus, the Court found in error that although the letter does not

> clearly and unequivocally exculpate [Davis] . . . the letter raises additional questions, including whether Selma believed that he was, as [the Warden] argues, writing to Wilder rather than [Davis]; whether Selma thought Wilder was known[1] as 'New York;' and whether Selma would have been able to

---

[1] By questioning whether Davis was *known* as "New York" rather than whether he was *from* New York, it appears that the District Court misread the letter. Moreover, the District Court acknowledged that "[c]onsiderable testimony was presented at the evidentiary hearing to show that Petitioner was called 'New York' by several fellow prisoners." *Davis*, 594 F. Supp. 2d at 817.

clarify these ambiguities had he been located prior to trial. These questions may have been answered had counsel undertaken a vigorous, effective search for Selma.

*Id.*

To the contrary, there is only way that the letter may reasonably be read: Selma (1) believed that Davis had confessed to the shooting and (2) mistakenly thought he was writing to Wilder instead of Davis. Although it seems unusual to write such a letter to the wrong person, Selma expressly conveyed his uncertainty about the person with whom he was corresponding ("if you're the guy I talked to in Inkster . . ."). Selma *is* sure about several distinct details regarding both the events surrounding the confession and what he learned about the shooting itself, the most significant of which is that the "guy from New York" was the shooter. Because only Davis was from New York, it is clear that Selma thought Davis was the shooter.

Like his trial and appellate counsel, Davis's habeas counsel says he has also been unable to locate or obtain a statement from Todd Selma. The District Court, having concluded that Selma's testimony may now be "irretrievably lost," held that Davis need not show prejudice for his ineffective assistance of counsel claim: "To hold that this failure to produce evidence regarding what [Selma's] testimony would have been prevents a finding of prejudice would be to insulate counsel's failure to investigate from review." *Id.* at 818. To the contrary, the letter unmistakably demonstrates that Selma's testimony would have served to inculpate, rather than exculpate, Davis. Davis was not prejudiced by the failure of his attorneys to procure prejudicial testimony from Selma.

### 2. Ineffective Assistance of Counsel — Failing to Impeach Derrick Glaze with Prior Conviction

The Michigan Court of Appeals held that Davis's trial counsel was not ineffective for failing to impeach Derrick Glaze, a key prosecution witness, with a prior felony conviction for retail fraud. It reasoned that "[t]he marginal impact of the alleged error fails to satisfy the prejudice prong of the test for ineffective assistance of counsel." *Davis*, 594 F. Supp. 2d at 821. The District Court found this to be an unreasonable

application of *Strickland* "in the larger context of counsel's other errors and the relative weakness of the prosecutor's case." *Id.* The Court continued: "The prior felony conviction, by itself, may not have persuaded the jury to return a not guilty verdict, but, if that impeachment evidence was introduced along with testimony that there was some evidence that Wilder, not [Davis], was the shooter, it may have been sufficient to sway the jury." *Id.* at 821-22.

The District Court's finding of prejudice for the failure to impeach Glaze for the prior conviction is contingent on Selma's exculpatory testimony. In the absence of testimony from Selma that Wilder was the shooter, then Davis cannot show that the impeachment would have made a difference in the outcome of his trial. Moreover, undisclosed impeachment evidence is cumulative "when the witness has already been sufficiently impeached at trial." *Brown v. Smith*, 551 F.3d 424, 433-34 (6th Cir. 2008). Here, Glaze's credibility was already impeached by the facts that he (1) was a drug dealer, and (2) made inconsistent statements to police and at a preliminary hearing. There is no reason to believe that the "marginal impact" of a retail fraud conviction would have significantly impacted the jury's assessment of Glaze's testimony, much less its final verdict.

### 3. Improper Prosecutorial Vouching of John Wilder's Credibility

The final basis upon which the District Court granted habeas relief was "improper vouching" by the prosecutor for the testimony of John Wilder. Because Davis failed to object at trial to the prosecutor's statements, this claim is procedurally defaulted unless Davis can show "cause and prejudice" to excuse the default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The District Court held that ineffective assistance of trial counsel constituted cause because the improper nature of the prosecutor's conduct was obvious and apparent. *Davis*, 594 F. Supp. 2d at 826.

It is unclear what the District Court believed was "improper vouching." Prosecutorial vouching is said to occur when the prosecutor "supports the credibility of a witness by indicating a personal belief in the witness's credibility[,] thereby placing the prestige of a [prosecutor's office] behind that witness" through "comments that

imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). That did not occur here.

During the trial, the prosecutor told the jury that Wilder did not receive favorable treatment for testifying against Davis: "[W]ilder got a no charge reduction. That is, he pleaded guilty as charged to the crime of accessory after the fact because that's what he did." *Davis*, 594 F. Supp. 2d at 833. According to the District Court, this constituted improper vouching because "[t]he circumstances surrounding the crime in this case certainly would have supported a second-degree murder charge [for Wilder] based upon an aiding and abetting theory." *Id.* at 826. Thus, by failing to charge Wilder initially with a higher crime, the prosecutor "attempted [an] end run around the plea-agreement-disclosure requirement," concealing Wilder's true motives for testifying and making the "repeated reference to the 'minimal' benefit afforded Wilder for his testimony improper." *Id.*

The prosecutor's statements do not fall under the rubric of improper vouching: the prosecutor did not indicate a personal belief of Wilder's veracity based on special knowledge of facts not before the jury. Rather, the District Court essentially concluded that the prosecutor committed some other form of misconduct by undercharging Wilder for the purpose of bolstering his credibility at Davis's trial.

But nothing remained undisclosed. The prosecutor charged Wilder as an accessory because presumably he did not have proof that Wilder thought that Davis was likely to shoot Prewitt or anyone else. In this case, Wilder's charge was in evidence: he testified at the very beginning of direct examination that he had pleaded guilty to being an accessory after the fact. (Trial Transcript, Part A, 6/22/99, 162). As the Michigan Court of Appeals wrote:

> Whether Wilder could have been charged with a more serious offense does not change the fact that he was only charged with being an accessory after the fact, to which he pleaded guilty. Therefore, the prosecutor's comments that the witness did not receive a charge reduction were accurate, and did not deceive the jury or deny defendant a fair trial. . . . The witness's interest in the matter was clear.

*Id.* at 825.

Accordingly, the judgment of the District Court is reversed.