**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 10a0390n.06**

**No. 08-1992**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Jun 29, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ERIC PAUL COCKREAM, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KURT JONES, Warden, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Respondent, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| and | ) | |
| | ) | |
| JOHN PRELESNIK, Warden, Handlon | ) | |
| Michigan Training Unit, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

Before:  BOGGS, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge.  Eric Cockream appeals the district court's denial of his petition for

habeas relief pursuant to 28 U.S.C. § 2254, in which he alleged prosecutorial misconduct and

ineffective assistance of trial and appellate counsel.  Finding that his appellate counsel's performance

did not prejudice him, and that the remainder of his claims necessarily fail as a result, we affirm the

district court's judgment.

I.

A Michigan jury convicted Cockream of kidnapping Michele Drogosch from the parking lot of her apartment complex. At Cockream's trial, Drogosch testified that, as she returned home from work at 4:00 a.m. and approached the door of the complex, a man grabbed her from behind, putting one arm around her neck and a hand over her nose and mouth. Her assailant dragged her across the lot toward a white Ford Taurus with the engine running, but when he released his grip to open the door, she escaped and ran back toward the building, screaming. Eye-witness Jonathan Pike testified that he saw the Taurus in the lot before he entered the building, also at about 4:00 a.m., and, once inside, heard screams that prompted him to look out the window. When he yelled out the window, the Taurus "went flying." Pike and his girlfriend then opened the front door for Drogosch, who Pike described as "scared out of her mind." The jury learned through police testimony that Cockream initially denied being in the apartment complex's parking lot, but later admitted pulling into the lot to snort a line of cocaine, though he insisted he never got out of his car. Drogosch positively identified Cockream as her attacker at a police lineup.

On direct appeal, represented by counsel, Cockream challenged the jury instructions and the sufficiency of the evidence against him, and contended that his 15- to 50-year sentence was disproportionate to his offense. The Michigan Court of Appeals affirmed the judgment of conviction, *People v. Cockream*, No. 235560, 2003 WL 356367 (Mich. Ct. App. Feb. 14, 2003), and the Michigan Supreme Court denied leave to appeal, 666 N.W.2d 669 (Mich. 2003). Cockream then sought state post-conviction relief, alleging three constitutional violations: prosecutorial

misconduct[1]; ineffective assistance of trial counsel for failing to object to the misconduct and to an allegedly improper jury instruction; and ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel and prosecutorial misconduct. The state trial court held that Cockream procedurally defaulted his ineffective assistance of trial counsel and prosecutorial misconduct claims when he failed to raise them on direct appeal. *People v. Cockream*, No. 2000-3533-FC (Macomb County Cir. Ct. Dec. 3, 2003). And though Cockream attempted to overcome the default by claiming ineffective assistance of appellate counsel, the court found the prosecutor's conduct and the jury instructions proper, rendering Cockreams's appellate counsel's failure to raise the now-defaulted claims nonprejudicial. *Id*. In one-sentence orders referencing Michigan Court Rule (M.C.R.) 6.508(D), both Michigan appellate courts denied Cockream leave to appeal. *People v. Cockream*, No. 252953 (Mich. Ct. App. Jul. 9, 2004); 690 N.W.2d 106 (Mich. 2004).

Cockream then sought a federal writ of habeas corpus on grounds nearly identical to those he raised in state post-conviction proceedings: prosecutorial misconduct; ineffective assistance of trial counsel for failing to object to the misconduct (he no longer complained of the jury instruction); and ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel or prosecutorial misconduct on direct appeal. Though faced with a procedural default

---

[1]The district court perceived Cockream's post-conviction petition to include a stand-alone prosecutorial misconduct claim. The federal court record, however, does not include the petition itself, leaving only the Michigan trial court's decision from which to divine the petition's contents. Though the Michigan court's decision seems to indicate that Cockream raised only ineffective assistance claims, mentioning prosecutorial misconduct only to challenge his counsels' performance, we, like the district court, give Cockream the benefit of the doubt and assume he raised prosecutorial misconduct during state post-conviction proceedings as a distinct claim.

argument from the warden, the district court addressed the merits of Cockream's claims in the interest of judicial efficiency, denied the petition, and declined to issue a certificate of appealability. Cockream timely appealed, and this court granted a certificate of appealability on each of his three claims.

II.

We review the district court's legal conclusions de novo and its factual findings for clear error. *Hill v. Hofbauer*, 337 F.3d 706, 710 (6th Cir. 2003). The Antiterrorism and Effective Death Penalty Act (AEDPA) governs Cockream's federal habeas petition. Under AEDPA, when a state court has adjudicated the merits of a claim, we may not grant a habeas petition unless the state court adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Dorn v. Lafler*, 601 F.3d 439, 442 (6th Cir. 2010) (AEDPA deference limited to claims adjudicated in state court on the merits). An adjudication qualifies as "contrary" to federal law when the court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on . . . materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). And "[a] state

court unreasonably applies Supreme Court precedent 'if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular prisoner's case.'" *Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003) (quoting *Williams*, 529 U.S. at 407). Under § 2254(e)(1), we presume the correctness of a state court's factual findings unless the petitioner rebuts them with clear and convincing evidence. *Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir. 2007).

The warden seemingly urges us to conclude that Cockream procedurally defaulted all three of the claims before us. But because this Circuit's interpretation of references to M.C.R. 6.508(D) in one-line state-court orders remains in flux, *see Guilmette v. Howes*, 591 F.3d 505 (6th Cir. 2010) (opinion vacated; en banc rehearing granted), we turn directly to the merits of Cockream's claims, *see Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). We begin by examining whether his appellate counsel provided constitutionally effective assistance, asking whether the Michigan trial court unreasonably applied Supreme Court precedent when it determined that Cockream's appellate counsel met constitutional requirements. If we endorse the reasonableness of the state court's decision, we necessarily conclude that Cockream's two additional claims also fail.[2]

---

[2]The Michigan court determined that Cockream's appellate counsel's performance did not prejudice him by concluding that the prosecutor's misconduct did not render Cockream's trial fundamentally unfair. If that decision withstands AEDPA scrutiny, we must also find that Cockream's stand-alone prosecutorial misconduct claim lacks merit and that his trial counsel met constitutional effectiveness standards even though he failed to object to the conduct.

To establish ineffective assistance of appellate counsel, Cockream "must show that counsel's performance was deficient," and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Only where counsel's performance falls "below an objective standard of reasonableness," which we evaluate "indulg[ing] a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance," do we deem it deficient. *Id*. at 688–89. Prejudice, in this context, requires showing a "probability sufficient to undermine confidence in the outcome" such that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact entitled to de novo review." *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000).

Cockream alleges that his appellate counsel erred by failing to raise (1) prosecutorial misconduct; and (2) ineffective assistance of Cockream's trial counsel for failing to object to the misconduct. But we need not examine whether counsel performed deficiently because, as the state court found, Cockream fails to establish that he suffered prejudice as a result of his attorney's performance. *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). As we explain below, the state court conformed its decision to relevant federal law when it concluded that none of the alleged violations—vouching for the credibility of witnesses, commenting on Cockream's decision not to testify at trial, shifting the burden of proof to Cockream, and appealing to the sympathy of the jury—were sufficient to undermine confidence

in the outcome of the trial.

The Michigan trial court applied the federal *Strickland* standard to trigger prejudice review, prompting AEDPA deference. But when it examined the prosecutor's conduct, it consistently cited state court precedent to hold the prosecutor's conduct proper. Reluctant to ensnare the federal courts in deciphering state law claims, the Supreme Court has placed the burden on state courts to make clear whether federal or state law controls their decisions. "In habeas, if the decision of the [state court] fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). Because Cockream contends that the prosecutor's remarks rendered his trial so fundamentally unfair as to deny him due process of law, he raises a federal issue cognizable on habeas review. And though the Michigan trial court's decision relies on Michigan state court cases to reject Cockream's claim, it acknowledges that "[t]he test for prosecutorial misconduct is whether a defendant was denied his right to a fair and impartial trial." *People v. Cockream*, No. 2000-3533-FC, at 3. We thus afford the state court's decision due deference under AEDPA, assigning petitioner the burden of showing that federal law demands a different conclusion. *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (Where a petitioner alleges constitutional error but the state court does not address the issue in federal constitutional terms, we ultimately inquire "whether the state court result is contrary to or unreasonably applies clearly established federal law.").

Under relevant Supreme Court precedent, prosecutorial misconduct demands reversal if that

conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). When reviewing the prosecutor's remarks, we keep in mind that "the appropriate standard of review for such a claim on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Darden*, 477 U.S. at 181 (internal quotations omitted); *see also Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citing *Cook v. Bordenkircher*, 602 F.2d 117, 119 n.5 (6th Cir. 1979), for the proposition that "it is the responsibility of the [state courts] to police their prosecutors; we have no such authority."). Thus, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

To examine prosecutorial misconduct, we employ a two-prong test, asking first whether the prosecution's remarks qualified as improper, and, if so, whether they "were sufficiently flagrant to warrant reversal." *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006). We measure flagrancy by looking to (1) the strength of the prosecutor's evidence; (2) the degree to which the prosecutor's remarks tended to mislead the jury or prejudice the defendant; (3) the extensivity (or isolated nature) of the improper conduct; and (4) the deliberateness of the prosecutor's statements. *Id*.

Cockream attempts to establish the requisite prejudice by first contending that the prosecutor rendered his trial fundamentally unfair when he vouched for the credibility of witnesses. "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993).

Cockream fails to demonstrate that the prosecutor reached that threshold here. The trial transcript reflects that the prosecutor made remarks in his opening and closing statements about how "nice" Drogosch appeared and that she testified truthfully. Specifically, during his opening he commented that "you're going to listen to Michele and you're going to see what an incredible nice young girl she is and she is not making this up." Trial Tr. Vol. II, Dist. Ct. Doc. ("Doc.") 13, 79. He further commented that "if we didn't have all that [other evidence], you believe it just on the victim's testimony herself." *Id*. In closing, he remarked that " [t]is is a wonderful girl this happened to," and "[w]e've talked about how you would gauge somebody's credibility," and alluded to additional evidence not in the record when he described her as "almost trying to minimize what happened to her." Trial Tr. Vol. III, Doc. 14, 31. Cockream also contends that the prosecutor erred when he commented that "I believe the best witness we had here was the other guy who lived at the complex." *Id*.

"Prosecutorial vouching is said to occur when the prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility[,] thereby placing the prestige of a [prosecutor's office] behind that witness through comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *Davis v. Booker*, 589 F.3d 302, 310 (6th Cir. 2009) (internal quotation marks and citation omitted). Asking the jury to infer credibility from facts already in evidence by virtue of Drogosch's testimony—that she appeared nice or minimized her testimony—does not cross that impropriety threshold. *United States v. Owens*, 426 F.3d 800, 806 (6th Cir. 2005) ("Counsel may argue for a reasonable inference that a witness is not credible . . .

assuming there exists evidence from which to so infer."). The prosecutor did not assert or imply that he drew from anything but Drogosch's trial testimony to argue that she was credible. And his comments about the eye-witness's testimony suggested only that Pike, as someone uninvolved in the altercation, presented facts without bias—a conclusion the jury could, based on Pike's testimony, reach on its own. Coupled with the trial court's instructions to the jury before opening statements that the lawyers' statement and arguments did not qualify as evidence, and standard instructions on the factors the jury should use to evaluate a witness's credibility, the prosecutor's statements did not deprive Cockream of his due process rights to a fair trial. *See Byrd*, 209 F.3d at 537–38.

Next, Cockream alleges that the prosecutor impermissibly commented on his decision not to testify when he stated in closing that there existed "no contradiction to what [Drogosch] said." Trial Tr. Vol III, Doc. 17-2, 3. The general principle Cockream relies upon finds strong support: "[i]t is well established that a prosecutor's direct reference to a criminal defendant's failure to testify is a violation of that defendant's Fifth Amendment privilege against compelled self-incrimination." *Byrd*, 209 F.3d at 533 (citing *Griffin v. California*, 380 U.S. 609 (1965)). Even indirect references to a defendant's failure to testify may breach constitutional guarantees, but we must "'look at all the surrounding circumstances'" to assess a possible due process violation. *Id*. (quoting *Butler v. Rose*, 686 F.2d 1163, 1170 (6th Cir. 1982) (en banc)).

This court has adapted its four-factor inquiry into the flagrancy of a prosecutor's improper remarks to address more specifically a prosecutor's indirect comment on the right to silence. We ask: "1) [w]ere the comments manifestly intended to reflect on the accused's silence *or* of such a

character that the jury would naturally and necessarily take them as such; 2) were the remarks isolated or extensive; 3) was the evidence of guilt otherwise overwhelming; [and] 4) what curative instructions were given and when." *Bowling v. Parker*, 344 F.3d 487, 514 (6th Cir. 2003) (internal quotation marks and citations omitted). If we determine that some other equally plausible explanation for the prosecutor's remarks exists, we cannot find manifest intent. *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000), *superseded by statute on other grounds*. And this court has previously held that "[g]eneral references to evidence as uncontradicted, while not recommended, may not reflect on the defendant's failure to testify where witnesses other than the defendant could have contradicted the evidence." *Byrd*, 209 F.3d at 534 (quoting *Raper v. Mintzes*, 706 F.2d 161, 164 (6th Cir. 1983)); *see also United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002) (The prohibition against commenting on a criminal defendant's silence "does not extend to a defendant's failure to call a witness or to otherwise present exculpatory evidence."). Because other witnesses who testified—namely, Pike—could have called Drogosch's version of the facts into question, the state court reasonably concluded that the record does not give rise to "any implication that this was designed to point out that Defendant did not testify in his own defense." *People v. Cockream*, No. 2000-3533-FC, at 4.

Cockream relies on the same remark—"there's no contradiction to what [Drogosch] said"—to argue that the prosecutor impermissibly shifted the burden of proof to him. Though "it [is] improper for the prosecutor to suggest that the defendant ha[s] the burden of proof or any obligation to produce evidence to prove his innocence," *United States v. Clark*, 982 F.2d 965,

968–69 (6th Cir. 1993), no error results from pointing out that the defense theory lacks evidentiary support, *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). Indeed, we recently found "nothing improper about highlighting uncontroverted testimony before the jury." *United States v. Kuehne*, 547 F.3d 667, 690 (6th Cir. 2008).

Cockream next urges us to find prejudice in the prosecutor's remarks that appealed to the passions or sympathies of the jury, depriving him of a fair trial. We, like the district court, take issue with the prosecutor's description of the crime as "every woman's nightmare, every father's nightmare"; his comment that Drogosch's escape could be attributed to God; the explanation of the effect that the crime had on his eating and sleeping patterns, and personal remarks that he worried for his own mother's safety; and the prosecutor's repeated focus on the continuing traumatic impact that the crime would have on Drogosch. *See United States v. Payne*, 2 F.3d 706, 712 (6th Cir. 1993) (condemning "comments [that] had the ability to mislead the jury as well as ignite strong sympathetic passions for the victims and against [the defendant]."). We strain to "understand how any competent prosecutor could believe that such comments were proper in a criminal trial." Dist. Ct. Op. at 12. But though the statements were improper, given their isolated nature (compared to the lengthy summary of the trial testimony comprising the remainder of the prosecutor's remarks), they did not rise to the flagrant level needed to warrant reversal. *See Byrd*, 209 F.3d at 532. Moreover, the strength of the evidence against Cockream and the trial court's instructions that the jury must base their decision on the evidence, not sympathy or prejudice, weigh against finding that the prosecutor's statements violated Cockream's due process rights. *See id.* at 533. Thus, as to this

and the three other prosecutorial improprieties that Cocrkeam contends undermined confidence in his trial's outcome, we cannot conclude that the state court unreasonably applied Supreme Court precedent when it held that Cockream failed to establish the prejudice required to state a viable ineffective assistance of appellate counsel claim.

Finally, Cockream contends that the prosecutor's comments, even if individually insufficient to deny him due process, accumulated to his prejudice. But though aggregated harmless errors require reversal when "the combined effect . . . was so prejudicial as to render [a] trial fundamentally unfair," *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004), only actual *errors* may combine to generate cumulative prejudice. Because we discern impropriety only in the prosecutor's remarks that appealed to the jury's sympathies, and nonetheless find the prosecutor's comments insufficiently flagrant to generate prejudice, Cockream's cumulative argument fails. That is, even if Cockream presents a meritorious attack upon the prosecutor's attempts to generate juror sympathy, he still exposes only that set of errors, and no others to combine it with. Accordingly, there was no cumulative prejudice.

Because Cockream fails to demonstrate that the state trial court unreasonably applied Supreme Court precedent when it found that his appellate counsel's performance did not prejudice him, we deny his petition on ineffective assistance of appellate counsel grounds. And as the same prosecutorial misconduct argument underlies the remainder of his claims, those necessarily fail as well.

No. 08-1992
*Cockream v. Jones*

III.

Accordingly, we affirm the district court's denial of Cockream's petition for a writ of habeas corpus.