The defendant was convicted, after a jury trial, of aggravated rape, G. L. c. 265, § 22(a ), rape, G. L. c. 265, § 22(b ), assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(b ), and assault and battery, G. L. c. 265, § 13A. He was acquitted on a charge of attempted murder, G. L. c. 265, § 16. He raises two issues on appeal. First, he argues that the trial judge abused his discretion by admitting the recording of the victim's 911 call under the spontaneous utterance exception to the hearsay rule. Relatedly, he contends that admission of the recording violated his State and Federal constitutional confrontation right. Second, he argues that prejudicial errors in the prosecutor's closing argument require reversal of his convictions. We affirm.
We briefly summarize in broad strokes the facts as the jury could have found them. The defendant (whom the victim did not know) knocked the victim unconscious as she walked down a street, dragged her into an alleyway, stripped and strangled her, threatened to kill her if she moved, and raped her vaginally and anally. After he fled the scene, she called 911. Much physical evidence corroborated the victim's account of the crime, including the nature and extent of her injuries, the similarity of soil on the victim to that in the alley, that the victim's clothing and possessions, as well as bloodstains, were later discovered in the alley by police, and that the defendant's deoxyribonucleic acid (DNA) matched that of the anal swab taken from the victim. In addition, the defendant made inculpatory statements to the police. Against this background, we now turn to the defendant's arguments on appeal.
The defendant's first argument concerns the admission of the recording of the 911 call,[2] which began with the victim asking for police help because she had "just got raped" and ended approximately three minutes later when officers arrived.[3] Throughout the 911 recording, the victim can be heard breathing heavily; she is audibly upset, her answers are often disjointed, and she appears to be disoriented. These impressions from the 911 recording are consistent with the observations of the responding officers; the victim was visibly shaking and crying, her face was bleeding badly, and she appeared to be in tremendous pain.
"A statement qualifies as a spontaneous utterance if 'there is an occurrence or event sufficiently startling to render inoperative the normal reflective thought process of the observer' and 'the declarant's statement was a spontaneous reaction to the occurrence or event and not the product of reflective thought.' A judge has broad discretion in determining whether a statement meets these two criteria." Commonwealth v. Simon, 456 Mass. 280, 296 (2010) (citations and quotation marks omitted). Commonwealth v. Alcantara, 471 Mass. 550, 558 (2015). The "essential issue is whether the statement was made under the stress of an 'exciting event and before the declarant has had time to contrive or fabricate the remark, and thus ... has sufficient indicia of reliability.' " Commonwealth v. Baldwin, 476 Mass. 1041, 1042 (2017), quoting from Commonwealth v. Zagranski, 408 Mass. 278, 285 (1990). No particular factor is determinative; we consider the totality of the circumstances to determine whether the two-part test is satisfied. See Commonwealth v. Tevlin, 433 Mass. 305, 319 (2001) (determination of whether statement is a spontaneous utterance rests on the particular set of circumstances).
Here, the victim had "just got raped" when she called 911. Although the record does not permit us to state categorically how much time had elapsed since the rape ended and the call began, the period was not long. At oral argument, defense counsel conceded that the period could be measured in minutes. The rape was a highly-traumatizing event, not least because it involved serious violence and strangulation. The victim's voice, breathing, tone, and responses all indicated that she remained under the influence of a stressful event. The judge could readily conclude from her disjointed, disorganized, and disoriented answers that her statements were not the product of reflective thought, but rather of the traumatic event she had just experienced. The observations testified to by one of the responding officers confirmed that the victim-even at the end of the call-remained upset and injured. In short, the judge did not abuse his discretion in admitting the 911 recording as a spontaneous utterance.
That said, the defendant is correct that "even in the case of a 911 telephone call initiated by the victim of a crime to deal with an ongoing emergency, some statements made during the course of the conversation may be classified as testimonial." Commonwealth v. Rodriguez, 90 Mass. App. Ct. 315, 324 (2016), citing Simon, supra at 300. He contends that there was no ongoing emergency in this case because the defendant had fled the scene and the rape was over. It follows, he argues, that the victim's statements during her 911 call were testimonial, see Davis v. Washington, 547 U.S. 813, 822 (2006), and that the admission of the 911 recording therefore violated his confrontation right.
Whatever else might be said about this argument, it fails because both the victim and the 911 dispatcher testified at trial and the defendant had a full opportunity to cross-examine them. For this reason, the defendant's confrontation right was not implicated, even if, arguendo, we were to consider any of the statements to be testimonial. See Crawford v. Washington, 541 U.S. 36, 68 (2004) ; Commonwealth v. Hurley, 455 Mass. 53, 60, 62-63 (2009).
The defendant next argues that prejudicial error occurred when the prosecutor vouched for the credibility of the victim, appealed to the sympathies of the jury, and inflamed their passions. The Commonwealth acknowledges that two of the statements (that the case involved "every woman's nightmare" and that the victim did not deserve to be raped[4] ) crossed the bounds of permissible argument and that the defendant preserved his objection in both instances. We are of the same view.[5] See Cockream v. Jones, 382 F. Appx. 479, 486 (6th Cir. 2010) (description of crime as "every woman's nightmare" was error); Commonwealth v. Gentile, 437 Mass. 569, 580 (2002) (statement that victim did not deserve to be killed was improper); Commonwealth v. Tavares, 471 Mass. 430, 442-443 (2015) (same). Because the defendant timely objected, we review for prejudicial error. An error is nonprejudicial only "[i]f ... the conviction is sure that the error did not influence the jury, or had but very slight effect .... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994), quoting from Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 445 (1983). "In determining prejudice, we consider (1) whether the defendant seasonably objected; (2) the judge's instructions; (3) the centrality of the error; (4) the jury's ability to recognize hyperbole; and (5) the strength of the Commonwealth's case." Commonwealth v. Torres, 437 Mass. 460, 465 (2002).
Here, several circumstances lead us to conclude that the errors were not prejudicial. First, the comments were brief and not dwelt upon. Second, the judge gave an instruction immediately before closing argument in which he explained the nature and role of closing argument.[6] Among other things, the judge explained that the attorneys are not permitted to refer to facts not in evidence, that they are not permitted to vouch for the credibility (or lack thereof) of any witness, that the determination of credibility is solely for the jury, that comments by the attorneys on the credibility of the witnesses should be disregarded, and that the attorneys are not permitted to appeal to the jury's passion, stating: "If you become conscious of any passion or prejudice as you consider the evidence or engage in your deliberation, you must put these feelings aside and not permit them to influence your thinking. If a lawyer makes such a comment, you should disregard [it]." Third, the jury acquitted the defendant of the most serious charge (attempted murder). Fourth, to the extent the comments went to the victim's credibility, they were unlikely to add much (if anything) given the essentially unassailable physical and DNA evidence corroborating the victim's testimony. Fifth, the evidence of guilt can fairly be characterized as overwhelming.
Judgments affirmed.

The Commonwealth moved in limine for the recording's admission. Although the defendant opposed that motion, he did not later object at any point during the trial. We need not determine whether the defendant's opposition to the motion in limine was alone sufficient to preserve the issue because, in this case, we determine there was no error. Accordingly, our standard of review matters not.

We have listened to the 911 recording ourselves.

The prosecutor improperly argued: "[The victim] struggled with addiction. [She] continues to struggle with addiction. Does that mean that she deserves to get grabbed off the street, knocked unconscious, beaten, and raped?"

We also agree with the Commonwealth that the other statements the defendant challenges did not cross the bounds of permissible argument. Specifically, there was no error in the prosecutor repeating, in sum and substance, the verbal exchanges between the victim and the defendant during the rape. The prosecutor was entitled to repeat fairly the evidence; she cannot be faulted for the fact that the evidence was vivid or unflattering to the defendant. See Commonwealth v. Lyons, 426 Mass. 466, 472 (1998). Nor did the prosecutor err in suggesting the evidence was "overwhelming," or in asking the jury to return a verdict "consistent with the evidence in this case, a verdict that is consistent with the truth." See Commonwealth v. Cole, 473 Mass. 317, 333 (2015). Finally, viewed in context, the prosecutor did not engage in impermissible vouching when she stated that the victim had no reason to lie about what happened on the evening in question. Taken in context, the prosecutor was not expressing a personal belief in the victim's credibility, but rather was fairly responding to the defendant's attack on the victim's credibility by pointing out that, based on the evidence, the victim had no motive to lie. See Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 179 (2008).

We do not mean to suggest that a preargument instruction inoculates against prejudice regardless of the seriousness of any particular error in argument. However, it is undoubtedly a mitigating factor to be considered.